118 T.C. No. 17

UNITED STATES TAX COURT

DAVID H. AND SUZANNE HILLMAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 19893-97.                    Filed April 9, 2002.

P's S corporation (S) performed management
services for real estate partnerships in which P had
direct and indirect interests.  P actively participated
in S by performing management services that S had
contracted to perform for the partnerships.  P was not
an active participant in any of the partnerships.  On
the Schedule K-1 issued to P from S, P's portion of the
management income was reduced by the portion of the
corresponding management fee expense paid by the
partnerships to S in an amount proportionate to P's
ownership percentage in each partnership.  The
reduction from the management income was treated as a
loss from a trade or business.  R disallowed the
management fee expense deductions on the grounds that
the expenses were passive within the meaning of sec.
469, I.R.C., and that P was not entitled to treat the

---

[*]This Opinion supplements a previously released opinion:
Hillman v. Commissioner, 114 T.C. 103 (2000).

income and expenses as "self-charged" items under sec. 469, I.R.C., and sec. 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14036 (Apr. 5, 1991).

Held: The management fee expense is passive and may not be deducted from petitioner's passthrough management fee income which is nonpassive within the meaning of sec. 469, I.R.C.

Stefan F. Tucker, for petitioners.

Wilton A. Baker, for respondent.

SUPPLEMENTAL OPINION

GERBER, Judge: In an earlier Opinion filed by the Court in this case we decided that petitioners were entitled to treat management fees as offsetting self-charged items for purposes of section 469.[1] The Court of Appeals for the Fourth Circuit disagreed and reversed our holding. Hillman v. Commissioner, 263 F.3d 338 (4th Cir. 2001), revg. 114 T.C. 103 (2000).[2]

_____

[1] All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.

[2] Petitioner had a self-charged item with the same attributes, in terms of economic substance, as provided for in sec. 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14036 (Apr. 5, 1991), with the difference being that it involved self-charged management fees instead of interest. This Court held that the same treatment should be afforded petitioner. In the reversal of our holding, the Court of Appeals for the Fourth Circuit decided that sec. 469(a) prohibited petitioner from a deduction or offset until and unless it is specifically permitted by law (e.g., by the issuance of an enabling regulation). Hillman v. Commissioner, 250 F.3d 228 (4th Cir. 2001), revg. 114 T.C. 103 (2000). The Court of Appeals, however, was sympathetic to petitioner's plight, finding the situation to be an inequity, but

(continued...)

Due to the reversal, we must now consider petitioners'
alternative argument concerning whether they correctly reported
the management fee items. In general we consider whether
petitioners' reporting position should be sustained. Petitioners
contend that the real estate activity of the passthrough entities
may be segregated into separate rental and trade or business
activities; i.e., passive and nonpassive.

Background[3]

During 1993 and 1994 David H. Hillman (petitioner) owned 100
percent and 94.34 percent, respectively, of the stock of Southern
Management Corporation (SMC). SMC, an S corporation, provided
real estate management services to approximately 90 passthrough
entities (including joint ventures, limited partnerships, and S
corporations) that were involved in real estate rental activities
(passthrough entities). Petitioner held direct and indirect
interests in the passthrough entities. The general partner of
each partnership is either petitioner or an upper tier
partnership or S corporation in which petitioner owns an
interest.

---

[2](...continued)
one that only "Congress or the Secretary (as the holder of the
delegated authority from Congress) has the authority to
ameliorate." Id. at 234.

[3] This case was submitted fully stipulated, and the factual
background discussed in Hillman v. Commissioner, 114 T.C. 103
(2000), is incorporated by this reference.

During 1993 and 1994, petitioner did not participate in the passthrough entities' activities, but he did actively participate in SMC by performing management services that SMC had contracted to perform for the passthrough entities. Petitioner treated his involvement with SMC's real estate management activity as a separate activity from any other activities carried on by SMC. During 1993 and 1994 petitioner materially participated in SMC's real estate management activity in excess of 500 hours. During those same years, SMC also conducted other operations in addition to real estate management services, such as recreational services, medical insurance plan underwriting, credit/collection services, and a maintenance training academy. Petitioner did not materially participate in any of these other operations of SMC.

Petitioner reported his SMC salary as income, and SMC deducted those amounts as an expense for compensation paid to petitioner for services related to the conduct of the real estate management activity for the 1993 and 1994 taxable years. SMC separately reported management fee income (after deduction of expenses, including petitioner's salary from SMC) on petitioners' 1993 and 1994 Schedules K-1. The portion of the management fee paid by the passthrough entities to SMC (and allocable to petitioner's ownership percentage in each passthrough entity) was deducted as a loss from a trade or business on either petitioner's Schedules K-1 for the 1993 and 1994 taxable years or

on the Schedules K-1 of upper tier passthrough entities for the 1993 and 1994 taxable years.

In computing their 1993 and 1994 taxable income, petitioners treated the proportionate ownership share of the passthrough entities' management fee deduction as a reduction from petitioners' gross income from activities characterized as nonpassive under section 469.

In the notice of deficiency, respondent disallowed the characterization of the management fee expense as nonpassive, referencing section 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14036 (Apr. 5, 1991), which provides that lending transactions (i.e., any transaction involving loans between persons or entities) may be treated as self-charged.

## Discussion

Enacted by Congress as part of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, the passive activity loss rules were designed to limit a taxpayer's ability to use deductions from one activity to offset income from another activity. In particular, under the section 469 passive activity loss rules, income generated from nonpassive activities cannot be offset by deductions generated from passive activities.[4]

_____

[4] Nonpassive losses may be carried to future years and applied against future passive income. Congress mandated in section 469(l) that the Secretary issue regulations to implement section 469. Under that mandate, sec. 1.469-7, Proposed Income

(continued...)

Accordingly, to be successful here, petitioner would have to show that the management fee income received and some portion of the management fee deductions claimed by the real estate passthrough entities were both passive or nonpassive. Petitioners reported that the deductions (proportionate in amount to their ownership in the passthrough entities) were nonpassive and deductible from the management fee income. In order to sustain that reporting position, petitioners must show that part of the real estate pass-through entities' deductions (expenses) were incurred in a separate trade or business rather than from the real estate activity, which is defined as passive by statute.

With that backdrop, we consider petitioners' alternative position that the real estate entities reported two separate activities in connection with the payment of the management fees. Petitioners describe the circumstances, as follows:

> In this case, the Real Estate Entities separately, and consistently, reported two K-1 line items: (1)Hillman's share of the management fee expense as "ordinary loss from trade or business", to the extent that he received a distributive share of management fee income from SMC, and (2) a line item from rental real estate income or loss (which included the management fee expense in excess of Hillman's distributive share).

---

[4](...continued)
Tax Regs., was issued in 1991 to provide, in certain situations, for the offset of passive interest deductions against nonpassive interest income. The offset avoided an inequity where a taxpayer incurred nonpassive income and passive loss from the same transaction (self-charged) in the same year.

Petitioner distinguishes himself from other partners because he was the only partner/interest holder who received substantial management fee income.[5]

In the notice of deficiency, respondent determined that petitioner was not entitled to "recharacterize * * * [his] share of the passive management expense of the Passthrough Entities as nonpassive so as to match it against * * * [his] share of nonpassive management income of * * * [SMC]." Respondent argues that the payment of management fees by the real estate entities cannot constitute a trade or business separate from the associated income for purposes of section 469. We agree with respondent.

In effect, petitioner's reporting approach treated his management income and the corresponding management fee deductions as a "self-charged" item in the same manner as provided for by sec. 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14036 (Apr. 5, 1991). The Court of Appeals for the Fourth Circuit, however, did not approve the self-charged approach for petitioner's management fee income and expense. As an alternative to the self-charged approach, petitioners argue that the real estate entities' management fee deductions, relative to SMC's nonpassive

---

[5] Petitioners do not dispute that the real estate entities were engaged in rental (generally passive) activities or that petitioner's management income earned through SMC was nonpassive in nature.

management income, are a part of a separate trade or business of the real estate entities. It should be noted that the management fee deduction, as it related to taxpayers other than petitioner (partners and interest holders in the same pass-through entities), was treated as part of the passive income regime.

Accordingly, we must decide whether the deducted portion of the passthrough entities' management fee deductions constitutes a separate "trade or business"; i.e., are nonpassive deductions. Section 1.469-4(b),[6] Income Tax Regs., contains the following definition of "trade or business activities" for purposes of section 469:

> (1) Trade or business activities. Trade or business activities are activities, other than rental activities or activities that are treated under sec. 1.469-1T(e)(3)(vi)(B) as incidental to an activity of holding property for investment, that--
>
> (i) Involve the conduct of a trade or business (within the meaning of section 162);
>
> (ii) Are conducted in anticipation of the commencement of a trade or business; or
>
> (iii) Involve research or experimental expenditures that are deductible under section 174 * * * .

To be engaged in a trade or business within the meaning of section 162, a "taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary

---

[6] These regulations were amended in 1995, but they were intended to apply retroactively to the years before the Court.

purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). In order to hold for petitioners on this argument we would have to decide that the real estate entities' payment of management fees, by itself, constituted a trade or business and/or an activity separate from the real estate rental activity in which they were engaged.

On the facts presented, we hold that the payment of management fees by the real estate entities did not constitute a trade or business or separate activity from the rental activity of those entities. The management fees were incurred by the entities in connection with rental activity and, therefore, would be a deduction attributable to the rental income/activity. See sec. 1.469-2T(d)(1)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5716 (Feb. 25, 1988). We, accordingly, hold that respondent's determination that petitioners were not entitled to reduce management income by the management fee deduction of the real estate entities was not in error.

Petitioners, as additional support for their attempt to treat the real estate entities' management fee deductions as nonpassive items, generally argue that respondent's disallowance of the deductions contravenes certain fundamental or established principles of taxation. For example, petitioners argue that, in effect, they had no accession to wealth because the corresponding

income and deductions result in no economic significance. For that proposition, petitioners reference section 61 and cases, including Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

Petitioners also argue that respondent's disallowance is inconsistent with the fundamental and global principle of matching income and expenses for purposes of taxation. In addition, they question whether there is some form of ordering of various Code provisions so that, for example, partnership provisions should not be preempted by section 469. Finally, petitioners argue that section 469 was not intended to negate these fundamental principles.

The principles referenced by petitioners are not being obviated or eclipsed by respondent's application of section 469. Such principles (i.e., the question of what is income, rules of subchapter K, etc.) precede the congressionally imposed section 469 limitation on reductions of nonpassive income by passive deductions. To the extent that the passive losses cannot be used, Congress has provided that they may be carried into the future to apply against a future year's passive income. Section 469 expressly limits petitioners' ability to offset the real estate entities' passive management fee deductions against SMC's (petitioner's) nonpassive management fee income from the same transaction. SMC and the real estate entities are, for purposes

of section 469, unrelated.  SMC provides services for the real estate entities and receives income in exchange.  The real estate entities' correlative expense or deductions are not costs incurred by SMC in the performance of the management services. Finally, petitioner's ownership in the real estate entities is not exclusive, and it was not exclusive in all years for SMC.

Unfortunately, petitioners have been snared by the reach of section 469 in, what appears to be, most inequitable circumstances.  As we discussed in our prior opinion, section 469 was designed to limit the use of losses generated by passive activities to offset unrelated income generated by nonpassive activities.  Although section 469 was designed to stop these practices, Congress recognized that it would be inappropriate to treat certain transactions between related taxpayers as giving rise to passive expense and nonpassive income.

The Secretary was charged with issuing regulations to implement section 469.  Commentary contained in the legislative history suggests that self-charged items should be provided for in the regulations.  In 1991, regulations were proposed that provided for self-charged interest.  Although more than 15 years have passed since the enactment of section 469 and 10 years have passed since the self-charged regulation for interest was proposed, no action has been taken to relieve inequity that may

be suffered with respect to self-charged items other than interest.

Although we find petitioners' plight lamentable, the Court of Appeals for the Fourth Circuit has held that the courts are incapable of providing relief in this situation.

To reflect the foregoing,

<u>A decision will be entered</u>

<u>for respondent.</u>